In re Hittson, 20 N. M. 319.

[No. 1716, May 12, 1915.]
In re HITTSON.
[Rehearing Denied June 28, 1915.]

## SYLLABUS BY THE COURT.

1. Where an attorney counsels and advises a client, or the agent of a client, to procure and obtain the possession of personal property, the title of which is in litigation, other than by the orderly process of law, for the purpose of taking an unfair advantage of another, he commits an act of disrespect to the court and violates his obligation as an attorney.

P. 324

2. Clear and convincing proof that an attorney obtained information from members of the grand jury concerning their vote as jurors, or of official matters coming before them, in matters in which the attorney was interested, authorizes this court to pronounce judgment of disbarment against such attorney.

P. 327

3. An attorney is not justified in wrongfully deviating from a strict performance of his duty to the court because of a bona fide belief that his adversary is attempting to take an unfair advantage.

P. 327

Disbarment proceedings against C. H. Hittson. Disbarment ordered.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

JOHN R. McFIE of Santa Fe, C. C. DAVIDSON and H L. BOON of Tucumcari, for respondent.

## STATEMENT OF FACTS.

This is an original proceeding instituted in this court, under the statute, looking to the disbarment of C. H. Hittson, a member of the bar of this state. The proceed-

ings are based upon a written accusation filed by the Attorney General, charging respondent with unprofessional acts, to which disbarment as a consequence is by law attached.    The accusation charges three specific acts as a basis of unprofessional conduct:    First, that respondent counseled and advised another to take property without process of law; second, aiding and abetting the conceal- ment of the property obtained without process of law; and, third, communicating with and obtaining from grand jurors information and advice as to what transpired be- fore said grand jury at a time when the same was in reg- ular session.    To this accusation respondent filed an an- swer, setting up facts which tended to explain respond- ent's version of the transactions set out in the accusation. Upon order of the court proofs were taken in this pro- ceeding before a special examiner.    There is some conflict in the proofs, but we consider the following facts to be established:    In 1912, Mrs. Jane Cooper and her two sons, living near the city of Tucumcari, N. M., were in possession of two horses named "Nettie" and "Snip," and a colt.    The horses were brought to New Mexico by the Coopers from a foreign state.    James Cooper was an in- valid, suffering with tuberculosis.    In the early part of March, 1912, the Coopers delivered two horses and a colt to Henry Smith.    The agreement between the parties was to the general effect that Smith should feed and care for the animals and retain them as security for any outlay of moneys or any expense incurred by him for and in behalf of the Coopers.    Subsequently, in the same month, Mattie Conlin, a supposed niece of Henry Smith, received a bill of sale for one of the horses, named "Nettie."    The bill of sale was signed by James Cooper, and the proof of the state indicates that Mrs. Cooper was present and approved the execution of the bill of sale made by her son.    The respondent contends that the bill of sale is a forgery, and was not, in fact, executed by James Cooper, but if it was, it was done in pursuance of a fraudulent scheme on the part of Smith, Mattie Conlin, and James Cooper to un- lawfully deprive Mrs. Cooper of the possession of the ani- mal.    The state contends that the animal was sold by

In re Hittson, 20 N. M. 319.

James Cooper to Miss Conlin in consideration of an indebtedness owing the latter from the former. The testimony of Miss Conlin does not fully account for the items making up this alleged indebtedness, nor are certain suspicious circumstances appearing on the face of the bill of sale fully explained by this witness. In August, 1912, Miss Conlin delivered possession of this animal to one S. B. Robinson. James Cooper died about April 19, 1912, and the administration of his estate not having been requested by any relative, Dr. O. E. Brown, an alleged creditor of the estate, petitioned the probate court for letters of administration in the name of Henry Smith, which was granted on the day the petition was filed, June 5, 1912. Thereupon Henry Smith, who was then in possession of one of the horses delivered to him by the Coopers, listed that animal, with other personal property, as the property of the said estate. In the early part of August, 1912, the administrator sold this animal to James Head. Robinson also sold the other horse, formerly in the possession of the Coopers, to James Head. The sale by the administrator was made with the consent of the probate court. Prior to this, during the months of May or June, Mrs. Cooper was advised by the probate judge that one of the horses, formerly in the possession of the Cooper family, had been listed as the property of the estate of James W. Cooper, deceased, and she bargained for its return to her. She admitted that the horse belonged to her son in his lifetime and was told that she could obtain possession of the animal upon payment, to the probate judge, of certain claims against the estate. She consulted her attorney and then refused to pay the claims in order to regain possession of the animal. In April, 1912, Mrs. Cooper brought an action in replevin against Henry Smith for the purpose of obtaining possession of the two horses and for damages. This action was begun in the court of the justice of the peace, but was subsequently dismissed. In September, 1913, Mrs. Cooper, through her attorney, brought an action for conversion in the district court against Henry Smith. On September 18, 1913, James Head and J. D. Cutlip, the probate judge, were made

parties defendant. On April 22, 1914, the plaintiff in said suit petitioned for dismissal of the cause. Prior to the filing of the petition for dismissal the respondent was informed, and believed, that the parties defendant were "execution proof," and that further prosecution of the conversion action would be without pecuniary profit to Mrs. Cooper. Therefore, in the language of respondent:

"A judgment against Smith or Head would be of no value, and we wanted to save the property of Mrs. Cooper which had been represented to us had been stolen from Mrs. Cooper."

A Mr. A. J. Wilson was then invited by co-counsel of respondent to talk the matter over, and respondent, his co-counsel, V. W. Moore, and Wilson decided to take possession of the animals then in the possession of James Head and his brother Yancy Head. Wilson was employed first to locate the property, which he did. He found the animals on the inclosed ranches of the Head Bros., reported the fact by telephone to the respondent, and was instructed to return to Tucumcari, which he did. Wilson was then employed to obtain possession of the property. Respondent handed Wilson a written paper, ordering any person in possession of the animals to deliver them to Wilson. Wilson, Moore, and this respondent then discussed the propriety of taking possession of this property without the consent of the Heads and without legal process, and it was decided that Wilson would not incur any criminal liability in this regard, because he would simply be acting as the agent of Mrs. Cooper, the alleged real and true owner of the property. Respondent advised Wilson to take the property any place he found it, and co-counsel of respondent agreed to this, after suggesting to respondent that replevin would not lie to recover possession of the property on account of the one-year statute of limitations. Wilson and McDade then went to the Head ranches and took one horse and a colt from one of the inclosed pastures on the ranch of one of the Heads. Wilson testifies that he found the other horse on the public range, although both James and Yancy Head testify that the animals were taken from their respective inclosed

pastures. The animals were driven by Wilson and Mc-Dade to Tucumcari and delivered to this respondent, who subsequently, in the late evening, delivered them to his co-counsel, Moore. The object of respondent in employing Wilson and McDade to thus obtain possession of the property was to keep possession of the animals as long as he could and to replevy them in the event that the animals were taken from him. The statute of limitations in replevin suit, in the judgment of respondent, in that event, would not apply. Respondent continually states that his object in thus obtaining possession of the animals was to bring them within the jurisdiction of the district court, although the animals were within that jurisdiction when on the Head ranches. After the grand jury of the April, 1914, term of the district court for the county of Quay had examined into the facts concerning the larceny of these horses, and after the attorney for the Heads had told respondent's co-counsel that if any attorney was implicated in the larceny transaction, he would be disbarred, respondent caused the animals to be delivered to the Heads, and then began an action in replevin in behalf of Mrs. Cooper to reobtain possession of the animals. In April, 1914, respondent appeared before the grand jury of Quay county and stated that members of the grand jury for the October, 1913, term came to him and informed him that they had voted an indictment against Smith and Cutlip for the larceny of said horses, and that the district attorney had advised them that Cutlip and Smith were not criminally liable on account of the disputed title to the animals. The respondent was questioned before this jury by the district attorney as to the names of the jurors who gave him this information, and he refused to divulge them, on the ground it would cause the jurors to be adjudged in contempt of court. The respondent stated before the court, in the investigation of his connection with the larceny, that the jurors told him these facts after the jury had adjourned. The district attorney testified that while the October, 1913, grand jury was in session, this respondent asked him why he, the district attorney, had made slighting remarks concerning

him, respondent, before the grand jury, and upon being asked how he, respondent, knew that the district attorney had referred to him, the respondent, before the grand jury, the respondent answered that he had friends on the grand jury. The respondent testifies that his statements before the court and grand jury were incorrect because his recollection has been refreshed, and he now remembers that the information concerning what transpired before the grand jury at their October, 1913, term was culled from the street, and did not come from any juror. There are other facts of equal importance within the record, but we do not deem it necessary to state them in this connection.

### OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above) — [1] The first count of the accusation charges respondent with unprofessional conduct in that he counseled and advised the taking and procuring of property without process of law. It is admitted by all parties that the title to the horses was in dispute. On the one hand, Mrs. Cooper claimed to own the property, while on the other hand James and Yancy Head claimed that they owned the property. The horses had been sold to James Head. One of the horses had been listed as the property of the estate of James W. Cooper, deceased. It is unnecessary to decide the true ownership of this property, and nothing herein contained shall be construed as adjudicating the title to the same. The question for decision of this court, under this one point, is whether an attorney is guilty of unprofessional conduct of such a nature as to require his disbarment, for counseling and advising another to procure and obtain possession of property without the aid of and directly against legal process. It is urged on the part of the respondent that he believed Mrs. Cooper to be the true and lawful owner of the horses, and that he was justified in advising and counseling an agent of the true owner to take possession of property without the aid of the process of the court. He relied upon the statements of ownership made by Mrs. Cooper and Wilson, and hon-

estly believed, perhaps, that the title of Mrs. Cooper was superior to that of either of the Heads, or of Henry Smith. He desired that Mrs. Cooper obtain possession of the property so that title thereto might be litigated in the courts.

It is also urged by respondent that he did not subject Mrs. Cooper, A. J. Wilson, or McDade to criminal liability because Mrs. Cooper was the true owner of the property, and that she could not be deemed guilty of larceny, nor could any person acting as her agent in that regard, because of the positive negation of a felonious intent in the asportation of the property. As a general proposition, it must be admitted that there can be no larceny without a felonious intent. But we fail to see how that doctrine can redound to the benefit or credit of this respondent. As a member of a high profession he is charged with implicit respect towards the orderly processes of the law and those who administer it. The accusation does not charge him with the commission of larceny, but with doing acts unbecoming a member of the profession. When a person becomes a member of the bar he obligates himself, expressly or impliedly, to act uprightly and in accordance with the law. He is presumed to be specially learned in the law on account of having devoted himself to the study of it. This learning he obtains for the benefit of those who do not specialize in law. He advises of law, not against law. It is said that lawyers of the highest ability and intellect differ as to what is the law, and that respondent ought not to be deemed guilty because his view of the law may have been incorrect. We agree that respondent cannot be condemned for whatever view of the law he may have taken. The ulterior purpose of the advice given Wilson by respondent is thus characterized by the Assistant Attorney General:

"The principal object of getting possession of this property, of course, was to eventually reimburse Mrs. Cooper for her alleged loss. But as an end to that object possession must be had. Possession could not be obtained by legal process, of which respondent by his own statements

was well advised, so we see respondent exercising much ingenuity to obtain possession by unlawful, unauthorized, illegal, and unethical practices. The law gives him no right to obtain possession by legal means, except by execution upon a duly rendered judgment, so he determines he will act independent of law. To obtain possession means that he may be adjudged, or his client adjudged, owner and entitled to the possession of this property by the weakness of the proof of his adversary, without ever having put his client to one iota of legal proof of her ownership. He can obtain a most important advantage, he must have concluded, by taking this property according to primitive methods. The burden of proving his ownership, or right of possession, is upon him until he gets possession of the property, but when he once obtains possession, that burden is no longer upon him, but upon his adversary."

We cannot sanction the practices of the respondent in this regard. His duty was to assist Mrs. Cooper to obtain her rights according to the prescribed law of the land. He journeyed away from the circumscribed sphere of an attorney in advising remedies not known to or sanctioned by the law. In doing this he has embarrassed the courts, to which he has declared his allegiance and fidelity, and has violated his duty to the courts of which he is an officer. His duty was to point out legal and authorized means of obtaining relief for his client, so that the force of law might remedy a wrong, not the force of strength or stealth. He well knew that the title of the property was in dispute. To sanction such practices by attorneys would be to disregard the fundamental principles of our government.

In view of what we have heretofore said it is unnecessary to discuss the question of the respondent aiding and abetting in the concealment of the horses. However, in our opinion, the proof does not justify a finding that he is guilty of that charge.

In re Hittson, 20 N. M. 319.

[**2, 3**] The evidence of the state, as well as the evidence of the respondent himself, justifies the conclusion that the respondent conversed with and obtained from members of the grand jury for the October, 1913, term of the district court for Quay county information and advice of an official character, and that respondent obtained this information when the said jury was in session. Section 987 of the Compiled Laws of 1897 provides that any juror who shall not keep secret what he himself, or any other grand juror, may have said, or in what manner he or any other grand juror may have voted, on a matter before them shall be punished by a fine. So far as the juror himself ·is concerned, it is immaterial whether the jury was in session at the time he may have divulged matters specified in said section or not. His duty is that of secrecy forever, except as otherwise provided by statute. An attorney owes an especial duty to the court and the people to refrain from obtaining information from members of the grand jury. That respondent was conversant with the actions of the district attorney before the grand jury is not open to doubt. His statements to the district attorney indicate his knowledge of what had transpired before that jury and this was at the time when the grand jury was in session. The attempted corrections of damaging statements of respondent do not suffice to justify us in finding that ·respondent did not converse with grand jurors during the times they were in actual session, concerning official matters. Therefore we find that the allegations of the accusation in this regard are proved beyond a reasonable doubt, and disagreeable as it is to us, we must find the respondent guilty of the first and third counts in the accusation.

It will therefore be the judgment and sentence of this court that the respondent, Charles H. Hittson, be disbarred as an officer and attorney of this court; and it is so ordered.

HANNA and PARKER, J.J., concur.